He plays the court. I am Jerome Shulkin. Excuse me, I'm going to raise this up a little bit here. I am Jerome Shulkin. I am the attorney for the appellant. Is there an appellant here, Kovacevich? Pardon? Who's the appellant? It's Mr. Kovacevich. Yes. And we just saw Mr. Kovacevich, didn't we? He was here earlier on another matter. All right. Same person, though. Busy man. Boy, that's confusing. I have to confess I came into this case not at the very beginning, but sometime later. And just to be brief, I'd like to give the court a brief position of what's going on with this property. Is this stuff not in the record, or is it in the record? Well, it's in the record, basically. Spokane Raceway Park was formed in 1971. It is a corporation. Sometime after that, Washington Motorsports Limited, which is a limited partnership with about 350 unit holders or limited partners, was formed. The property is owned by Washington Motor WML, as we refer to it. There is a major body of litigation that has been going on since 2003 in the state court involving a receivership. That, by far and large, is the major portion of the litigation that has been proceeding. The corporation, since it does not have but four shareholders, is the minor actor. One of the forming parties, the initial party forming the Raceway Park and the property, is Orville Moe, who is most antagonistic to the receiver and obviously antagonistic to the trustee. He is a thorn in their side. They've tried to get rid of him without going into a lot of detail. They even tried to get him convicted in federal court of bribery. I'm sorry for interrupting, but maybe this would help focus the facts you want us to be thinking about. The bankruptcy appellate panel held that this case was moot because, given that there was no stay below, that there's no way that we can grant any effective relief. We can't unwind the settlement agreement at this point. Some of what you're saying now leads me to believe that's even more the case because you're talking about how really complicated all this is. I understand. There wasn't a stay below. That's correct, right? I'm sorry? There was not a stay of the bankruptcy case. No, there wasn't. Since then, the settlement agreement has been effectuated, correct? Well, we bring ourselves down to two issues. It's clear. One, is it moot and is it a frivolous appeal? Well, let's address moot. Can you tell us how you think we could effectively grant you any relief? I think that effectively, one, you cannot undo the transfer of the 2.9 acres to the Indian tribe. That's accomplished. The case is not over. Just the fact that that portion is moot does not render the entire case moot. But isn't that pretty important in the whole? It's very, very important. And so if you can't undo that, which I worry is quite important in the whole. Absolutely. And why should we get involved? I mean, if one would want to save this whole thing and save it for appeal, why didn't one ask for a stay? So that things wouldn't happen like that one transaction, which is key, wouldn't happen. The fact that there wasn't a move for a stay in the earlier part of the earlier case was before my time. That's not an excuse. It's just a statement. I appreciate that. Other than the transfer of the land to the tribe, were there any other parts of the settlement agreement that have been implemented? That have been implemented? Yes. The implementation is that the money has been paid by the tribe. The money has been received by the estates. The distribution of the funds has remained as an argument. But principally, that which has not rendered this moot has been the determination of the claims of the trustee versus the receivership. Because there are many key factors there that have yet to be decided, have not yet been decided. And that portion is not moot. The property is gone. You mean under the settlement agreement? Under the settlement agreement. That's correct. That was anticipated, was it not? That that would still be something one would argue about after putting the settlement agreement together? I think I have to answer that yes. So you would say, it sounds like what you're telling us is that the transfer of the land to the tribe, and the tribe paying the money, that that was a very key part of the settlement agreement. It was the settlement agreement, yes. It was the settlement agreement. OK. All right. Now, so if one were to ask me, coming into this, what side do you want to be on? I would say from a legal standpoint, I want to be on the trustee's side for these various reasons. From an equitable and fair- I'll tell you what, you're a breath of fresh air to suggest that. After a while, you have to own up to where things really stand. I'm concerned about the charge that this appeal is frivolous. For this reason, as long as there is an opportunity or a purpose behind the bringing of what you have brought, with good intentions, then the decisions go in favor of whoever's charge is having- But the BAP denied the trustee's request for sanctions. Isn't that right? As I recall, the BAP said to the trustee, you did not properly seek recovery there. I didn't see any subsequent order where any sanctions were awarded. No. OK. There weren't any awarded. OK. I think they're seeking them now. They're seeking it on appeal now? Well, there's a separate motion. They did file a motion before the BAP? That's my recollection. They filed it before the Ninth Circuit, I think. A motion before the Ninth Circuit. You want to reserve this time and let's clarify that with the other side? I think that the trustee clarified that, if you will. But I take the position there has been no decision by the BAP panel or anybody else with regard to any frivolity, and that we feel we have definitely had a purpose in mind with regard to the mootness. The best benefit we could have would be to have this court say that the four elements, which the Bankruptcy Court was required to find, have not been met. For sanctions you're talking about? Pardon? For sanctions. Yes. You're talking about the sanctions. The sanctions. No, I'm not talking about sanctions. No, I'm talking about the approval of the settlement. Oh, I understand. That's what I thought. And the last one, which is the principal one, is that it is beneficial to the creditors. How can $60,000, which doesn't even come close to the trustee's fee application, and possibly the only recovery of any significance to the state, be beneficial to the creditors? The answer comes from the trustee that, well, it saved us a lot of money from fighting with the Indian tribe. What saving is there to the creditors, to the stockholders of the corporation, if they get zero to begin with? Do they get minus zero? No. That is not the answer. What we are looking for from an equitable standpoint is a determination by this court that regardless of the fact that the property was transferred, that the requirements for the settlement were not met, and in addition that there is no frivolous action. That will help because of matters that are outside the realm of this court that are going on within the state proceedings. And I think I'm proper by trying to get into that. May I save? Well, now you're over your time. Pardon? Now you're over your time. Oh, I'm sorry then. I apologize. Thank you. I was trying to give you some time. That's okay. So, all right, we'll hear from the trustee. Good morning. John Munding. I am the Chapter 11 trustee for the bankruptcy estate of Spokane Raceway Park, Inc. I was appointed by the Honorable Patricia Williams of the Eastern District of Washington Bankruptcy Court. Have you been the trustee all along? The Chapter 11 case was filed by the shareholders, Mr. Moe, Mr. Kovacevic, who you met earlier this morning, and by other counsel. There was an immediate motion that sought to remove the debtor in possession, Mr. Moe, from control of this Chapter 11 estate. That motion was made by the receiver as well as joined in by the United States trustee. After that motion was granted, after hearing an argument, Judge Williams, at the indication from the U.S. trustee, went ahead and appointed myself. You've been involved in this whole thing? From the very beginning of this particular Chapter 11. So with respect to this particular settlement agreement that brings the case to us. Yes. Has it been fully implemented? The settlement? Yes, it has. And if I could touch on that briefly. And before I forget, there is one point that I think we just need to clarify. Mr. Shulkin may have been confused, but the bankruptcy appellate panel did, by subsequent order as found in the excerpts of Record 57 and 58, did sanction Mr. Kovacevic and Mr. Shulkin $10,000 in attorney's fees and $2,133.21 in costs. Was that appealed from? Was that a separate notice of appeal? That was not appealed from. That was not appealed? No. Okay, so that's not before us. That is correct. There is a request within my brief before the Ninth Circuit. We also require a separate motion. Right, and all that I'm requesting is a finding that the appeal is frivolous, and then upon such a finding I would make the motion. We did make a motion earlier. Actually, your motion would ask us to find, the motion for attorney's fees would ask us to make a finding as to frivolousness, and then we would decide whether that was the case and then refer the amount to the appellate commissioner. Okay, Your Honor. So that's not the way, we don't do that here. Why don't you just address the mootness for a few minutes? Certainly, I'd be happy to address the mootness. Is that your position here, the case is moot? The case is not only moot, as found by the bankruptcy appellate panel, but even if the court wanted to go to the substantive issues of whether the settlement was proper, that's also supported by the record, Judge Williams' findings. So on mootness, is it your position that you can't, that the transfer of the land to the tribe cannot be unwound? Well, first, the land was not the property of Spokane Raceway Park, Inc., the debtor. The land was actually titled and held in the name of the limited partnership, Washington Motorsports Limited, which is in a receivership. That transfer has taken place, that transaction has closed, the money has changed hands, the tribe has commenced what they'd intended to do with the land. So that particular matter was completed quite some time ago. Subsequent to that, there was an agreement for allocation of the proceeds between Washington Motorsports Limited and Spokane Raceway Park, which has also occurred, and that was approved under a separate 1919 motion in the bankruptcy court, and that has not been appealed. So we have those two issues, but more importantly, the primary reason for considering the settlement was the end to the litigation in which the bankruptcy estate was a party and a defendant and had exposure, and we settled by dismissal of the bankruptcy estate from pending federal litigation. That litigation has advanced against other individuals. Judge Shea of the United States District Court in eastern Washington has made significant rulings in that particular case. So again, the dismissal of these defendants is one more point that would make this particular issue moot. And I believe we cited the IRS-Patello case in our briefing, setting forth the standards, and there simply is no way that the relief requested could be granted, and in fact, we are still uncertain as to what the relief sought was in this particular appeal. We felt the bankruptcy appellate panel was quite clear. The record that is before the Ninth Circuit is quite clear concerning both mootness and the standards that are necessary for abuse of discretion to overturn Judge Williams' decision. It simply has been advanced, but it has been advanced as we can tell from the four volumes of records at significant cost, and that's why we're requesting the ability to file a motion to at least recover some of those costs and expense. If you request, you just file the motion. Thank you, Your Honor. If the panel has any questions. I have no other questions. All right. Thank you. Thank you.
judges: Wardlaw, Paez, Smith N. R.